■ ARTHUR BRATONE et al., Respondents, v LINDA CONFORTI-BROWN et al., Appellants. [56 NYS3d 174]—

In an action, inter alia, pursuant to RPAPL article 15 to compel the determination of claims to real property, the plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Yablon, Ct. Atty. Ref.), entered February 20, 2015, as, upon a decision of the same court dated April 22, 2014, made after a nonjury trial, is in favor of the defendants and against them dismissing their first and second causes of action, which sought a judgment declaring the plaintiff Vernon-Sutton, Inc., the owner of the subject real property by adverse possession, and the defendants cross-appeal from so much of the same judgment as is in favor of the plaintiffs and against them dismissing their first and third counterclaims, which sought to recover damages for waste and mismanagement of corporate assets.

Ordered that the judgment is modified, by (1) deleting the provision thereof dismissing the first and second causes of action, and (2) adding thereto a provision declaring that the plaintiff Vernon-Sutton, Inc,. is not the owner of the subject real property by adverse possession; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

This action pursuant to RPAPL article 15 is to compel the determination of claims to a parcel of real property located on Vernon Boulevard in Long Island City (hereinafter the property). The property was acquired in 1960 by brothers-in-law Clemente Bratone (the individual plaintiffs' father) and Ray Conforti (the defendants' father). Upon Bratone's death in 1966, Conforti became the sole fee owner. By deed dated September 7, 1971, Conforti transferred ownership of a portion of the property to the plaintiff Vernon-Sutton, Inc. (hereinafter VSI), a corporation formed in 1960 by Conforti and Bratone. Conforti retained title to the remaining portion of the property, and it is this parcel (hereinafter the disputed parcel) that is the subject of this action. The plaintiffs Arthur Bratone, Ronald Bratone, and Steven Bratone collectively own 50% of VSI's stock, and the defendants, Linda Conforti-Brown and Martha Conforti, own the remaining 50% of VSI's stock.

In 2007, the plaintiffs commenced this action, alleging, inter alia, that VSI had acquired title to the disputed parcel through adverse possession. In response, the defendants maintained that they own the disputed parcel, having inherited it from their father. In addition, the defendants asserted, in their answer, derivative counterclaims on behalf of VSI, which alleged that certain transactions approved by the individual

plaintiffs constituted a waste and mismanagement of VSI's corporate assets.

After a nonjury trial, the Supreme Court, in a judgment, dismissed, inter alia, the plaintiffs' first and second causes of action, which alleged adverse possession. The court determined that VSI's use of the disputed parcel was with the implied permission of the owner and that such permission was never repudiated. In addition, the court dismissed the defendants' first and third counterclaims. The court determined, in effect, that the evidence did not demonstrate that the money expended was a waste of corporate assets. The plaintiffs appeal from so much of the judgment as dismissed their adverse possession claims, and the defendants cross-appeal from so much of the judgment as dismissed their first and third counterclaims.

In reviewing a determination made after a nonjury trial, this Court's power is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account that, in a close case, the trial judge had the advantage of seeing and hearing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]).

The Supreme Court properly determined that VSI is not the owner of the property by adverse possession. Under the law as it existed at the time that the plaintiffs commenced this action, where a claim of adverse possession was not based upon a written document, plaintiffs had to demonstrate that they "usually cultivated, improved, or substantially enclosed the land" (*Walsh v Ellis*, 64 AD3d 702, 703 [2009]; *see* RPAPL former 522). In addition, an adverse claimant must establish by clear and convincing evidence that possession of the property was "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period" (*Walling v Przybylo*, 7 NY3d 228, 232 [2006]; *see Koudellou v Sakalis*, 29 AD3d 640 [2006]; *Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.*, 192 AD2d 501, 503 [1993]).

The purpose of the hostility requirement is to provide the title owner notice of the adverse claim through the "unequivocal acts of the usurper" (*Monnot v Murphy*, 207 NY 240, 245 [1913]; *see Walling v Przybylo*, 7 NY3d at 232; *Hall v Sinclaire*, 35 AD3d 660, 662 [2006]). "Hostility can be inferred simply from the existence of the remaining four elements, thus shifting the burden to the record owner to produce evidence rebutting the presumption of adversity" (*United Pickle Prods. Corp. v Prayer Temple Community Church*, 43 AD3d 307, 309 [2007]; *see Harbor Estates Ltd. Partnership v May*, 294 AD2d 399, 400

[2002]; *City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118 [1982]). However, where there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession, the presumption of hostility may not apply (*see Estate of Becker v Murtagh*, 19 NY3d 75, 82 [2012]). "[T]o establish the hostility element, the party asserting the adverse possession claim must 'come forward with affirmative facts to establish that the use [of the property] was under a claim of right and adverse to the interests of [the true owner]' " (*id.* at 82, quoting *Albright v Beesimer*, 288 AD2d 577, 578 [2001]).

"When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner" (*Hinkley v State of New York*, 234 NY 309, 316 [1922]; *see Goldschmidt v Ford St., LLC*, 58 AD3d 803, 805 [2009]; *Koudellou v Sakalis*, 29 AD3d at 640; *Kings Park Yacht Club, Inc. v State of New York*, 26 AD3d 357 [2006]; *Forsyth v Clauss*, 242 AD2d 364 [1997]; *Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.*, 192 AD2d at 503). Such permission can be express or implied (*see Goldschmidt v Ford St., LLC*, 58 AD3d at 805; *Koudellou v Sakalis*, 29 AD3d at 641; *Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.*, 192 AD2d at 503), and "if the first possession is by permission it is presumed to so continue until the contrary appears" (*Hinkley v State of New York*, 234 NY at 317).

Here, the Supreme Court's determination that VSI's initial entry and continued presence on the property, including the disputed parcel, was with the implied permission of record owners Bratone and Conforti was warranted by the facts. Indeed, the evidence is uncontroverted that Bratone and Conforti were agents of VSI, responsible for managing its daily operations. Thus, while no formal written agreement existed, VSI's initial entry and use of the property, including its use of the disputed parcel, was implicitly permissive based on Bratone's and Conforti's knowledge regarding the ownership of the property and VSI's use of the property (*see Center v Hampton Affiliates*, 66 NY2d 782, 784 [1985]; *see e.g. Goldschmidt v Ford St., LLC*, 58 AD3d at 805; *Susquehanna Realty Corp. v Barth*, 108 AD2d 909, 909-910 [1985]). Contrary to the plaintiffs' contention, the fact that the permitted use was overly broad did not effectively repudiate the permission granted (*see e.g. Hinkley v State*, 234 NY at 318). Rather, "permission . . .

is presumed to so continue until the contrary appears" (*id.* at 317 [emphasis omitted]), and "adverse possession will not arise until there is a distinct assertion of a right hostile to the owner" (*Koudellou v Sakalis*, 29 AD3d at 641 [internal quotation marks omitted]; *see e.g. McNeill v Shutts*, 258 AD2d 695, 695-697 [1999]). Here, VSI's use of the property from 1960 until about 2005 remained consistent with the implied permission initially granted by Bratone and Conforti. The first distinct assertion of a right hostile to the owner did not occur until about December 2005, when VSI first began to explore selling the entire property (*see e.g. Allen v Mastrianni*, 2 AD3d 1023, 1024-1025 [2003]; *Dickerson Pond Sewage Works Corp. v Valeria Assoc.*, 231 AD2d 488, 488-489 [1996]; *Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.*, 192 AD2d at 503). This action was commenced in 2007. Consequently, the plaintiffs failed to prove that they possessed the 'disputed parcel under a hostile claim of right for the required statutory period of 10 years. Since this is, in part, a declaratory judgment action, the judgment should have included a provision declaring that VSI is not the owner of the property by adverse possession (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962]).

Turning to the defendants' cross appeal, the Supreme Court's determinations to dismiss the defendants' first and third derivative counterclaims were warranted by the facts. The defendants' first derivative counterclaim alleged that $70,000 expended by VSI for counsel fees in connection with a prior action was a waste of corporate assets. The evidence at trial demonstrated, however, that the plaintiffs, in commencing the prior action, did not engage in bad faith, fraud, self-dealing, or other misconduct. Thus, the business judgment rule is applicable, and the plaintiffs are entitled to the presumption that they acted "in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes" (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 538 [1990] [internal quotation marks omitted]; *see Auerbach v Bennett*, 47 NY2d 619, 620 [1979]). Even absent this presumption, the evidence established that the amount expended was not a waste of corporate assets because consideration and benefit was returned to VSI in the form of legal services rendered (*see Aronoff v Albanese*, 85 AD2d 3, 5 [1982]). Accordingly, the court properly dismissed the defendants' first derivative counterclaim.

The defendants' third derivative counterclaim sought to recover money that was paid by VSI to Arthur Bratone as a residential development fee. The fee was authorized by Arthur

Bratone, without input from the other shareholders, as compensation for his work in negotiating and investigating offers to purchase or co-develop the property as a residential development. Since Arthur Bratone was the only shareholder to receive a direct financial benefit from this transaction, the action was not entitled to a presumption of good faith under the business judgment rule (*see Marx v Akers*, 88 NY2d 189, 202 [1996]). The evidence presented at trial, however, established that the fee charged to VSI was reasonable compensation for the work provided, and the defendants failed to present any evidence to the contrary. Accordingly, the residential development fee paid to Arthur Bratone was not a waste of corporate assets, and the defendants' third derivative counterclaim was properly dismissed.

The parties' remaining contentions are without merit. Leventhal, J.P., Cohen, LaSalle and Barros, JJ., concur.